[No. 35198. *En Banc.* December 15, 1960.]

THE STATE OF WASHINGTON, *Respondent,* v. HARRY REED HARRIS, *Appellant.*[1]

[1]Reported in 357 P. (2d) 719.

384

*Stephen J. O'Brien* and *Ralph Milne* (*Richard A. Hilton,* of counsel), for appellant.

*Arnold R. Zempel* and *Lyman T. Johnston,* for respondent.

ROSELLINI, J.—The appellant was charged by information, in the Superior Court for Snohomish County, with the crime of escape. Upon his arraignment, at which he was represented by counsel, he pleaded guilty, and was sentenced to serve ten years (the maximum sentence provided by RCW 9.92.010) in the state reformatory.

His first assignment of error concerns the court's refusal of his request to change his plea, which was made immediately after the court had announced that it would not recommend a minimum sentence, but would leave the determination of that matter to the board of prison terms and paroles.

The argument advanced by the appellant's counsel in support of the request was that he had been assured by the prosecutor that both he and the court would recommend a minimum sentence, and that the circumstances of the escape and the defendant's conduct afterwards justified such a recommendation. In so arguing, counsel said:

" . . . this boy knew nothing of this escape until ap-

proximately twenty minutes before it happened. He was working in the kitchen when these fellows that took off came in, and they took him with them. He didn't want to go, but he was scared to do otherwise."

Counsel admitted that he realized the court was not bound by the prosecutor's assurance that a minimum sentence would be recommended. He now argues that the quoted language amounted to the tender of a *prima facie* defense, which would justify the granting of his motion to change his plea.

■ The only possible defense suggested is duress. Under RCW 9.01.112, duress is a defense only where it is shown that the threats of one person have created in the mind of another a reasonable apprehension of instant death or grievous bodily harm. "Mere fear or threat by another is not sufficient to constitute a defense." 1 Wharton's Criminal Law and Procedure 262, § 123. In his statement to the court, counsel did not tender a defense which met the statutory requirement. He did not reveal that the appellant was threatened at all, much less threatened with instant death or grievous bodily harm.

■ At any time before entry of judgment, the trial court may permit a plea of guilty to be withdrawn and other plea or pleas to be substituted. RCW 10.40.175. Motions of this kind are addressed to the sound discretion of the trial court, to be exercised liberally in favor of life and liberty. When such discretion has been exercised, the action of the trial court will not be disturbed on appeal except upon a showing of abuse of discretion. *State v. Jessing,* 44 Wn. (2d) 458, 268 P. (2d) 639.

The appellant does not contend that he has a constitutional right to change his plea, and he recognizes the fact that the trial court has discretion in granting such a motion.[2]

---

[2]The case of *In re McClintock v. Rhay,* 52 Wn. (2d) 615, 328 P. (2d) 369, was not cited by either counsel, and properly so, for that case deals only with the right to counsel. Here the appellant was represented by two attorneys of his own choice, who were present at all of the proceedings.

■ The appellant has brought to this court an affidavit of counsel in which it is stated that the court signed the judgment and sentence proffered by the prosecutor before counsel was given an opportunity to be heard. When the request to change the plea was made, the court replied, "No. Not now." It is the argument of the appellant that the signing of the judgment and sentence was premature and did not preclude the court from granting the request to change the plea, but that the court, thinking the request was too late, failed to exercise its discretion.

The record discloses that the court listened to the arguments of both the appellant's attorneys as to why a suspended sentence should be imposed or a minimum sentence recommended to the parole board. When the court refused to grant this request, one of the attorneys moved for permission to withdraw the plea of guilty, which the court denied.

Thereafter on the 30th day of April, the appellant was again brought before the court for the purpose of correcting the judgment and sentence entered on March 17th, because it recited that the appellant appeared without counsel. At that time the appellant's attorney again moved to withdraw the plea of guilty, and the motion was again denied.

Granting the correctness of the appellant's view that the signing of the proposed judgment and sentence could have no legal effect until the judgment was pronounced, and further recognizing the merit of the appellant's complaint that the court had decided in advance what disposition it would make of his case, it still does not appear that the appellant was deprived of any substantial right by that decision, or by the premature signing of the judgment.

A general statement of the duty of the trial court, viewed liberally in favor of the defendant, is found in 14 Am. Jur. 961, § 287, and reads as follows:

"As in other cases of discretionary power, no general rule can be laid down as to when a defendant will be permitted to withdraw his plea. The decision in each case must depend to a great extent on the particular attendant circumstances. Generally, however, it may be said that

the withdrawal of a plea of guilty should not be denied in any case where it is in the least evident that the ends of justice will be subserved by permitting not guilty to be pleaded in its place. The least surprise or influence causing a defendant to plead guilty when he has any defense at all should be sufficient grounds for permitting a change of plea from guilty to not guilty. Leave should ordinarily be given to withdraw a plea of guilty if it was entered by mistake or under a misconception of the nature of the charge, through a misunderstanding as to its effect; through fear, fraud, or official misrepresentation; was made involuntarily for any reason; or even where it was entered inadvisedly, if any reasonable ground is offered for going to the jury. If such a plea has been received by the court without observance of the precautions and solemnities required by law, the court should permit the plea to be withdrawn. On the other hand, if a defendant, with full knowledge of the charge against him and of his rights and the consequences of a plea of guilty, enters such a plea understandingly and without fear or persuasion, the court may, without abusing its discretion, refuse to permit him to withdraw it."

This statement is quoted in Judge Finley's dissenting opinion in the case of *State v. Jessing, supra,* wherein the majority upheld the denial of a request for a change of plea even though the defendant's counsel, who had been employed after the discharge of the attorney who represented defendant when the plea of guilty was entered, tendered a defense.

Here, no legal defense was tendered to the court, and it was apparent that the request for a change of plea was simply motivated by disappointment in the judge's attitude and a hope that a jury would deal more lightly with the appellant.

The court stated to the appellant and his counsel that it felt the board of prison terms and paroles had a better opportunity to investigate the circumstances of the escape and to determine whether the appellant was equally guilty with the others who had participated in the escape, and that it was the considered opinion of the court that in the case of each escapee, the matter of setting a minimum sentence should be left to the board's discretion. It is plain

from the record before us that the denial of the request to change the plea was not occasioned by any misconception of the court's power and was not an abuse of discretion inasmuch as no valid reason for granting the request was presented to the court.

It is also objected that the court did not pronounce the judgment and sentence as required by RCW 10.64.010, and did not ask the appellant if he had any legal cause to show why judgment should not be pronounced against him as required by RCW 10.64.040.

It is true that the court made no formal oral pronouncement of the judgment and sentence; however, in speaking to counsel, the court stated it was "going to give him the maximum which is ten years"; and did not ask whether the appellant had any legal cause to show why judgment should not be pronounced against him, although the judgment recites that this question was asked.

 These omissions were irregularities which could have been corrected had they been called to the attention of the trial court, but no complaint was made of them at the time. We have held that even where there is a motion to vacate for failure to observe the formalities in pronouncing sentence, the denial of the motion is not error if there is no showing that the defendant was deprived of any substantial right. *State v. Gallagher,* 46 Wn. (2d) 570, 283 P. (2d) 140. Here, the appellant was not deprived of any right and he was made fully aware of the nature of the judgment and sentence. He does not contend that he had any legal cause why the judgment should not have been entered, but only that the court gave him no opportunity to state any cause.

The fact that we find in this case no reason to reverse the judgment of the trial court, does not mean that we condone the action of any trial court in disregarding the statutory formalities which the legislature has seen fit to prescribe for the protection of defendants in criminal cases. While they may seem superfluous when the court feels that a defendant is fully apprised of his rights and given an

opportunity to present all of his arguments and defenses, too often the failure to observe them (and also the placing of too much faith in the accuracy of prosecutors and attorneys and the consequent signing of orders without reading them) leads to unnecessary agitation of both counsel and clients and the taking of appeals such as this one. The expense which this entails to the state, as well as to the defendant, is reason enough to justify the observation of the formalities; but a greater reason is that which the legislature had in mind—that without them there is always the risk that a defendant may be punished without having had a full and fair hearing before a court that is concerned for the protection of his rights.

The judgment is affirmed.

WEAVER, C. J., MALLERY, HILL, DONWORTH, FINLEY, and FOSTER, JJ., concur.

OTT, J. (dissenting)—This appeal involves the law of this state applicable to the *arraignment* of a person accused of crime. The majority hold that, at the time a person charged with a criminal offense is brought before the bar of the court for the *purpose of arraignment,* a judge *exercises judicial discretion* in granting such a person his constitutional rights. I do not agree for the following reasons:

(1) Art I, § 22, of our state constitution, as amended by amendment 10, provides:

"In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, to have compulsory process to compel the attendance of witnesses in his own behalf, to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed. . . . In no instance shall any accused person before final judgment be compelled to advance money or fees to secure the rights herein guaranteed."

As I read this section, an accused person is *unconditionally guaranteed* the following rights:

(A) To appear and defend against the charges;

(B) To be represented by an attorney;

(C) To demand the nature of the accusations and to receive a written copy thereof;

(D) To be permitted to testify in his own behalf;

(E) To meet the witnesses against him face to face;

(F) To have witnesses in his behalf;

(G) To have a speedy trial by an impartial court or jury.

The constitution does not grant to any judge the power to deny an accused person these guarantees. *In my opinion, at the time of arraignment, there is no judicial discretion involved in granting an accused person his constitutional rights.*

(2) The majority hold that, in the few minutes the accused stood before the bar of the court and orally entered a plea of guilty and the court orally pronounced the sentence it would impose based upon the plea, the status of the defendant immediately changed from that of an *accused* person to that of a *convicted* person, and that, even though a formal judgment of conviction had not been entered, it was "too late" for the appellant to then withdraw his plea and enter a plea of not guilty. I do not agree that the accused's request was "too late" for the following reasons:

(A) An accused person's status does not change by his plea of guilty. It changes only upon the entry of "final judgment." In interpreting the meaning of the word "accused," as it is used in this section of the constitution, we said in *In re McClintock v. Rhay,* 52 Wn. (2d) 615, 328 P. (2d) 369 (1958):

"Under the constitution, a defendant in a criminal proceeding is an *accused person* until formal judgment and sentence have been entered."

In the cited case, the accused, prior to "final judgment," requested permission to withdraw his plea of guilty and have counsel appointed to act in his behalf. The request was refused by the trial court. In reversing the trial court, we held that, even though a plea of guilty had been entered, there had been no "final judgment," and defendant's status

was still that of an accused person, and that he was entitled to his constitutional rights as such.

In the instant case the status of the appellant was still that of an accused person standing before the bar of the court for the purpose of arraignment, and, as such, he was entitled to exercise his constitutional guarantees.

(B) The defendant immediately informed the court that the plea of guilty was not voluntarily made because he had been promised that the prosecuting attorney would recommend a minimum sentence. The promise was not fulfilled.

(C) The accused further asserted that he was not guilty of the crime of escape because he was taken as a hostage by the other escapees. He asserts he was not one of them.

Whether the plea of guilty, which is tantamount to a confession, was voluntarily made or whether the appellant was a hostage, are facts which are not determined by a judge at the time of arraignment. They are determined only at the trial, which is guaranteed an accused person by our constitution.

(3) The majority rely upon RCW 10.40.175 which provides:

"At any time before judgment, the court may permit the plea of guilty to be withdrawn, and other plea or pleas substituted."

This section of the statute is cited in support of the majority's contention that the court may exercise its discretion in permitting an accused to withdraw his plea. RCW 10.40.175 is § 1057 of the territorial Code of 1881. Art. XXVII, § 2, of the constitution, provides in part:

"All laws now in force in the Territory of Washington, which are not *repugnant* to this Constitution, shall remain in force . . ." (Italics mine.)

The interpretation which the majority have placed upon the cited statute is repugnant to and in direct conflict with the constitutional guarantees afforded an accused person by Art. I, § 22.

In my opinion, RCW 10.40.175, given its proper construction, is not repugnant to the constitution. In order to

give the statute a constitutional construction, the word "may" is construed as "must" or "shall." Giving the word such a construction in *Buell v. Toppenish,* 174 Wash. 79, 24 P. (2d) 431 (1933), we said:

"Appellants rely upon certain well known texts and decisions to the effect that the word 'may' is to be construed as meaning 'must' or 'shall' when public interests or *rights* are concerned, and when the public or third persons have a *de jure* right which can only be protected and enforced by such a construction. [Citing case and authorities.]

"We accept these authorities as stating the well settled rule of law, and we are heartily in accord therewith, . . . " (Italics mine.)

See, also, *Spokane County ex rel. Sullivan v. Glover,* 2 Wn. (2d) 162, 97 P. (2d) 628 (1940).

The court erred in failing to give the statute its constitutional construction and in denying the accused the right to withdraw his plea, when, as here, the request was timely made. The majority, by affirmance, perpetuate the error.

The majority cite *State v. Jessing,* 44 Wn. (2d) 458, 268 P. (2d) 639 (1954). In the cited case, the issue that the accused's constitutional guarantees were denied him was not raised. The only issue raised was the competency of the accused's waiver of his right to counsel. Nowhere in that opinion is there any reference to Art. I, § 22, or amendment 10, of our state constitution. The court, in its review of the *Jessing* case, decided the issues as the parties had framed them. The decision stands as the law of that case, but is not controlling here.

For the reasons stated, the judgment and sentence should be vacated, the appellant restored to the status of an accused person and afforded his constitutional rights.

HUNTER, J., concurs with OTT, J.